Charlie **BROOKS**, Jr., Petitioner-Appellant,

v.

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections,** Respondent-Appellee.

No. 82–1613.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1982.

See also, 103 S.Ct. 1490.

Jay Topkis, Eric M. Freedman, Michael G. Carey, Matthew E. Fishbein, Eleanor G. Ostrow, Paul, Weiss, Rifkind, Wharton & Garrison, Jack Greenberg, Joel Berger, Anthony G. Amsterdam, New York City, for petitioner-appellant.

Gerald H. Goldstein, San Antonio, Tex., for amicus curiae, TCLU.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Frederick M. Schattman, Asst. Dist. Atty., C. Chris Marshall, Fort Worth, Tex., for amicus curiae, Tim Curry, Crim. Dist. Atty.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

Five years ago, on December 3, 1977, Charlie Brooks, Jr., then 34 years of age, was convicted of the murder of David Gregory. The jury found that the conduct of Brooks that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased would result, and that there was a probability that Brooks who had previously been convicted of felonies four times, would commit criminal acts of violence that would constitute a continuing threat to society. Accordingly, as required by Texas law, the Court imposed a sentence of death. His motion for a new trial was denied. On appeal, the Court of Criminal Appeals of Texas affirmed the conviction and sentence. *Brooks v. State,* 599 S.W.2d 312 (Tex.Cr.App.1979). After two motions for rehearing had been denied, Brooks applied to the Supreme Court for review, and this was denied. *Brooks v. Texas,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996, *rehearing denied,* 453 U.S. 950, 102 S.Ct. 25, 69 L.Ed.2d 1036. At his trial Brooks was represented by two court-appointed counsel, William E. Burdoch and Glen E. Eakman, Esq. During his appeal he was represented by Glen E. Eakman and Allen K. Butcher.

Brooks, represented by Danny B. Burns, Esq., then filed two petitions for habeas corpus in state court. These were denied by the trial court and the Court of Criminal Appeals affirmed the denial on December 1, 1981.

On October 16, 1981, Brooks was sentenced to be executed on December 7, 1981. On December 2, 1981, he filed an application for habeas corpus in federal court. Numerous pleadings and briefs were filed by the parties. It was contended that in at least 12 respects Brooks had been denied his federal constitutional rights during his state trial. Several time extensions were granted to Brooks by the federal court in order to enable him to obtain evidence. Four hearings were held to permit him to adduce evidence and argument in support of his contention. On October 28, 1982, the district court issued a 26-page opinion discussing in detail each of Brooks' contentions, accompanied by one two-page chart outlining each of Brooks' arguments and the manner in which each had been raised. The federal district judge discussed each argument and found each of them to lack merit. Accordingly, he dismissed the peti-

tion. Therefore, the state trial court ordered Brooks' execution on December 7, 1982.

Brooks filed a motion for a new hearing in the federal district court, but this was denied. The federal district court issued a certificate of probable cause. Without such a certificate, Brooks would have been unable to appeal, 28 U.S.C. § 2253, so his right to appeal would have been summarily ended. However, the district court denied Brooks' request for a further stay of execution.

On November 15, 1982, Brooks filed an application in this court for a stay of execution. We promptly ordered oral argument on the issuance of a stay, and heard argument on November 26, 1982. Counsel for each party was allowed the time requested for oral argument and counsel for Brooks was permitted to continue argument beyond the allotted time. The Texas Civil Liberties Union appeared as *amicus curiae* and its counsel was allowed oral argument. We denied the stay because there was no substantial question concerning the correctness of the district court's judgment.

On December 2, a motion for reconsideration of our order denying a stay was filed by eight new counsel, appearing for Brooks. They contended that Brooks' constitutional rights had been violated by the state court in five ways. Two of these arguments had not been raised before, either in state court, federal district court, in the application for stay to us, or in oral argument on that application. *See* 28 U.S.C. § 2254(b); *Gray v. Lucas,* 677 F.2d 1086, 1099 n. 13 (5th Cir.1982); *Cobb v. Wainwright,* 666 F.2d 966, 968 n. 1 (5th Cir.), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *Spivey v. Zant,* 661 F.2d 464, 477 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982) (habeas claims must be presented first to federal trial court). Two others had been asserted in some fashion previously, but were presented in substantially different fashion. Simultaneously, we are advised by Brooks' counsel, an application for stay has been presented to the Supreme Court, —— U.S. ——, 103 S.Ct. 1490, 74 L.Ed.2d ——.

Despite the eleventh-hour presentation of new issues, we have reviewed each of the new issues carefully and again reviewed each of the issues previously presented to us. Each member of this panel is acutely aware that Brooks' life may depend on our action. Each of us is determined to fulfill our sworn obligation to uphold and defend the Constitution and laws of the United States, doing justice to the rich and to the poor alike, favoring neither the rich because he is rich, nor the poor because he is poor. We have that same duty to act impartially between the condemned and the state, favoring neither the state nor the condemned. That duty compels us to declare that we find no substantial question presented.

We review briefly the issues presented in the application for reconsideration:

■ (1) Almost five years after Brooks was convicted, Woody Lourdes, who had been indicted for and convicted of the same offense, and whose conviction had been reversed on appeal, made a plea bargain with the State, pleaded guilty to non-capital murder and was sentenced to forty years in prison. The contention is that the two sentences are not proportional and that there is no rational basis for the difference in their sentences. It is well-settled that the State may favor with clemency a person who confesses his guilt. Moreover, to exact review of a prior sentence each time another person involved in the same crime or a person involved in another similar crime is sentenced would require literally endless review unless the state ceased to prosecute and obtain convictions in capital cases. The constitution does not require retrospective review of a sentence imposed four years earlier.

(2) Counsel at the trial is asserted to have been incompetent at the sentencing stage because they failed to call witnesses who could testify favorably to Brooks in mitigation of his punishment. This issue was not raised in state court and was not pleaded in federal court although Brooks did mention it in his federal court testimony. Seven affidavits, six from members of

Brooks' family and one from his pastor are now presented to us. None of these were presented prior to the petition for reconsideration; indeed they are all dated November 30, 1982. There is no claim that this is a newly discovered issue or that this is newly discovered evidence.

■ After examination, it appears that none of them would have been likely to have any effect on the question whether there was a probability that Brooks would commit criminal acts of violence in the future. Moreover, while we do not suggest that Brooks waived the question, we note that the state trial judge carefully raised the question of Brooks' right to present such evidence and that both Brooks and his lawyers stated that they did not wish to do so. The state trial record discloses that, after the state rested, the following occurred:

> MR. EAKMAN (defense counsel): Your Honor, can we put in the record that the Defendant does not want to testify at his hearing and that decision was made by him?
>
> THE COURT: Yes, you may.
>
> MR. EAKMAN: After advising with us and also, (sic) he does not want to offer any witnesses in his behalf. This decision also was made by him after advising with us.
>
> THE COURT: Mr. Brooks, you have heard the recitation of counsel, Mr. Eakman. Are those matters true and correct, that you have consulted with your attorneys and decided that you do not wish to testify at this point and you do not wish to call witnesses in your behalf at this time?
>
> MR. BROOKS: Yes.

This was a tactical decision made by Brooks' counsel and Brooks. The failure to present the evidence was neither the result of incompetent representation nor prejudicial.

■ The second allegation of alleged ineffectiveness is trial counsels' failure to urge voluntary intoxication as a defense. Other than a reference in the original trial record that Brooks had been drinking on the morning the crime was committed, no evidence that Brooks was in fact intoxicated at the time of the crime has ever been proffered—at the criminal trial, in state or federal habeas corpus proceedings, or even, at this late date, by affidavit. Unless there was evidence to support such a defense, counsel could not raise it and cannot be found ineffective for failure to urge a phantom argument.

(3) The jurors were required to take the oath required by Texas law, that "the mandatory penalty of death or imprisonment for life will not affect your deliberations on any issue of fact." The sole authority cited is *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), in which the Supreme Court held that a juror could not constitutionally be excluded for failure to take this oath. In this case, no juror objected to the oath and no juror was excluded as a result of objection to it. Therefore the *Adams* rule does not apply here. However, to be certain that the jury was properly instructed, we have reexamined the complete charge to the jury and find it fairly and properly imposed on the state the burden of proof beyond a reasonable doubt and to a moral certainty.

■ (4) The state judge's exclusion of juror Barbolla is contended to have violated *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968). If Ms. Barbolla had been excluded only on the basis of her objection to the death penalty, this would have been error for she did not say she would automatically vote against it but, indeed, said she was willing to vote for its imposition in a proper case. She was excluded at least in equal part, because she said she could not render a verdict that a person who does not actually pull the trigger is guilty of murder and, therefore, could not follow Texas law that makes a person who participates in a crime leading to murder intending the death of the victim guilty of that offense even though he was not the direct cause of death. The state is entitled to exclude jurors who state they cannot follow a constitutional state law. The ar-

gument is made less, rather than more, tenable by the argument that the issue was irrelevant because the state "has always taken the position in this case that Mr. Brooks did intend the death of the victim." The state might not have been able to prove this part of its contention beyond a reasonable doubt. In addition, the state might have been able to prove that Brooks intended the victim to die but not that he pulled the trigger. In either event, it was entitled to jurors who would follow Texas law in rendering a verdict on guilt or innocence.

(5) The fifth contention is simply that each claim of error deserves heightened scrutiny because of prosecutorial conduct condemned by one Texas judge on the Court of Criminal Appeals but not mentioned as error by any of the other members of that court. There is no claim that this conduct amounted to a denial of due process of law or otherwise violated Brooks' constitutional rights. Nonetheless, we have given each of the claims careful scrutiny.

Finally, we note that no claim has been made that the evidence did not support Brooks' conviction as well as the jury verdict that his crime and his criminal potential warranted the capital sentence.

The merits of Brooks' claims have been presented by a total of twelve lawyers, in nine separate hearings, and have by this time been reviewed by 23 judges, state and federal. Despite this, we would not hesitate to grant the stay were we aware of any argument of substance, any contention that would benefit by further briefing and oral argument. The application for stay has received the sober, reasoned, and deliberate consideration of Brooks' claim that the irrevocable nature of the penalty demands. Our granting of yet another stay at this late hour for further review of claims so often considered and of such little merit would be abdication of our duty to face and decide the issue before us in accordance with the Constitution and laws of the United States.

For these reasons, the application for stay is DENIED.